15-911-cv
*Fabozzi v. Lexington Ins. Co.*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 7ᵗʰ day of March, two thousand sixteen.

PRESENT:    JOSÉ A. CABRANES,
            BARRINGTON D. PARKER,
            DEBRA ANN LIVINGSTON,
                        *Circuit Judges.*

---

PAUL FABOZZI AND ANNETTE FABOZZI,

        *Plaintiffs-Appellants,*　　　　　　　　　　15-911-cv

        v.

LEXINGTON INSURANCE CO.,

        *Defendant-Appellee.*[*]

---

FOR PLAINTIFFS-APPELLANTS:     MELISSA S. GELLER (Eric R. Breslin, *on the brief*), Duane Morris LLP, Newark, NJ.

FOR DEFENDANT-APPELLEE:     DONALD G. SWEETMAN, Gennet, Kallmann, Antin & Robinson, P.C., Parsippany, NJ.

---

[*] The Clerk of Court is directed to amend the official caption to conform with the caption above.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Margo K. Brodie, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court be and hereby is **VACATED** and the cause **REMANDED**.

Plaintiffs-appellants Paul and Annette Fabozzi ("plaintiffs" or "the Fabozzis") appeal the District Court's February 27, 2015 judgment in favor of defendant-appellee Lexington Insurance Co. ("defendant" or "Lexington"). For the reasons that follow, the judgment is vacated and the cause remanded.

This insurance dispute arose in 2002, when the Fabozzis, having begun a renovation of their Staten Island home, learned that its interior walls had so thoroughly rotted away that the structure was on the edge of collapse. They filed a claim with Lexington under their homeowners' policy ("the policy"). Their claim was denied, and in October 2004 they brought this lawsuit. We assume the parties' familiarity with the history of the litigation, the salient facts, and the issues on appeal.

We address first the Fabozzis' argument that the District Court erred in requiring them to prove that the collapse of their home was caused by a covered peril, rather than requiring Lexington to prove that it was not. Reviewing this legal determination *de novo*, *see Allianz Ins. Co. v. Lerner*, 416 F.3d 115-16 (2d Cir. 2005), we find no error.

The parties' disagreement concerning the burden of proof turns on whether the policy's coverage for loss involving collapse is properly characterized as "all-risk" coverage or "named-perils" coverage. Under New York law, which governs this dispute, an insurance policy is said to provide all-risk coverage if it "covers all risks of physical loss, except for those perils specifically excluded." *TAG 380, LLC v. ComMet 380, Inc.*, 890 N.E.2d 195, 199 (N.Y. 2008); *see also Atl. Lines Ltd. v. Am. Motorists Ins. Co.*, 547 F.2d 11, 12 (2d Cir. 1976) (characterizing as an all-risk policy one that "insured for physical loss or damage to the property insured from any external cause, except for certain [enumerated] exclusions" (internal quotation marks omitted)). Named-perils coverage, in contrast, "covers only specifically enumerated risks." *TAG 380, LLC*, 890 N.E.2d at 199; *see also Georgitsi Realty, LLC v. Penn-Star Ins. Co.*, 999 N.E.2d 520, 521 (N.Y. 2013) (characterizing as a named-perils policy one that covered "direct physical loss . . . or damage . . . caused by or resulting from any of 14 kinds of events" (ellipses in original) (internal quotation marks omitted)). Under an all-risk agreement, "[o]nce [the insured] demonstrate[s] the existence of the all-risk policy and the loss," the insurer bears the burden to prove that the loss was caused by a peril specifically excluded from coverage. *Travelers Indem. Co. v. Zeff Design*, 875 N.Y.S.2d 456, 458 (1st Dep't 2009). But if coverage is named-perils, it is for the insured to demonstrate that an enumerated peril caused the loss. *Potoff v. Chubb Indem. Ins. Co.*, 874 N.Y.S.2d 124, 125 (1st Dep't 2009).

2

The Fabozzis' policy provides named-perils coverage for loss involving collapse. The relevant provision, item 8 in the "Additional Coverages" section ("Additional Coverage 8"), states that Lexington insures for "direct physical loss to covered property involving collapse . . . *caused only by one or more of the following*," then lists six causal agents that trigger coverage. App. 1281 (emphasis supplied). The provision, then, "covers only specifically enumerated risks," *TAG 380, LLC*, 890 N.E.2d at 199, and is perfectly analogous to the named-perils provision in *Georgitsi Realty*, which covered "direct physical loss . . . caused by or resulting from any of 14 kinds of events," 999 N.E.2d at 521 (internal quotation marks omitted). Plaintiffs' argument that the provision "covers all risks of physical loss, except for those perils specifically excluded," *TAG 380, LLC*, 890 N.E.2d at 199, is impossible to square with its plain terms.

The Fabozzis argue that Coverage A (which applies to the insured "dwelling") provides all-risk coverage, and "[n]othing in the policy suggests that Additional Coverage 8 changes or in any way alters the coverage." Pl. Br. 26. It is true that Coverage A provides all-risk insurance. Everyone agrees on that. But it is not true that "nothing in the policy suggests that Additional Coverage 8" alters the variety of coverage; such alteration is decisively suggested by the drafter's decision to exclude collapse from Coverage A, then structure Additional Coverage 8 as a named-perils provision.[1] Accordingly, we conclude that the District Court did not err in requiring the Fabozzis to prove that the collapse of their house was caused by an enumerated peril.

We reach a different conclusion, however, with respect to the District Court's construction of the phrase "caused only by" in Additional Coverage 8, a construction we review *de novo*.[2] *Allianz*, 416 F.3d at 113. Additional Coverage 8 provides, in relevant part:

> **Collapse.** We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:

---

[1] The Fabozzis might be arguing that the policy must be all one thing, or all the other—all-risk or named-perils, but not a hodgepodge of both. We can think of no reason that should be the case, and many reasons it should not, chief among them that such a rule would frustrate the efforts of contracting parties to allocate different risks in different ways according to their needs and desires. Several district courts within this circuit have treated insurance contracts as all-risk/named-perils "hybrids" as a matter of course, and they were right to do so. *See, e.g.*, *N. Am. Foreign Trading Corp. v. Mitsui Sumitomo Ins. USA, Inc.*, 413 F. Supp. 2d 295, 300 (S.D.N.Y. 2006); *Costabile v. Metro. Prop. & Cas. Ins. Co.*, 193 F. Supp. 2d 465, 474 (D. Conn. 2002).

[2] Lexington argues that plaintiffs forfeited their argument on this issue by failing to object to the jury instruction reflecting the District Court's interpretation of Additional Coverage 8. We disagree. Under Federal Rule of Civil Procedure 51, a party properly preserves its challenge to a jury charge if it "objects to an instruction . . . on the record, stating distinctly the matter objected to and the grounds for the objection" before "the [jury] instructions and [final] arguments are delivered." Plaintiffs did so here, *see* App. 925-27; they also submitted a competing instruction reflecting their interpretation of the provision, *see* App. 393-94. Rule 51 requires nothing more.

**a.** Perils Insured Against in COVERAGE C — PERSONAL PROPERTY. These perils apply to covered buildings and personal property for loss insured by this additional coverage;

**b.** Hidden decay;

**c.** Hidden insect or vermin damage . . . .

App. 1281.

The Fabozzis read this to mean, "We insure for direct physical loss to covered property involving collapse . . . *only if it is caused by one of the following*" (and argue in the alternative that the provision is ambiguous). Under this reading, the Fabozzis would be covered if one of the listed perils caused the collapse but some non-listed peril also contributed. Lexington reads it to mean, "We insure for direct physical loss to covered property involving collapse *caused exclusively by one or more of the following*." Under this reading, the Fabozzis would *not* be covered if a listed peril caused the collapse but a non-listed peril contributed as well.

The District Court agreed with Lexington, but we cannot. Additional Coverage 8 is ambiguous. It obviously limits in some fashion the perils against which Lexington insures. But nothing in the text makes clear whether we should prefer the reading, "We insure for collapse only if it is caused by one of the following," or "We insure for collapse only if it is caused by one of the following, to the exclusion of all other causes." Defendants do not argue that their reading of the provision is the only grammatically correct one, or the most grammatically correct one, and we do not think that it is. Neither is clearly sounder than the other. Nor can we find a published appellate case, from this circuit or any other, meaningfully analyzing identical (or even materially similar) language. (A few cases, though, have assumed without much discussion that the provision takes the construction urged by plaintiffs—a fair indication that that construction is reasonable. *See Parker v. Worcester Ins. Co.*, 247 F.3d 1, 2 (1st Cir. 2001) ("Additional Coverage 8 provides coverage for 'collapse' only where due to certain specified causes."); *Ercolani v. Excelsior Ins. Co.*, 830 F.2d 31, 32 (3d Cir. 1987) (vacating a judgment in favor of the insurer when collapse was caused by both insect damage (a named peril) and ice (not a named peril)).)

Additional considerations weigh strongly for the Fabozzis' reading. First, the word "caused" is fraught with legal meaning: used in New York insurance contracts (as in most other legal sources), it embraces principles of proximate causation well-established in the case law. *See, e.g., Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 48 (2d Cir. 2006) (interpreting the word "cause" in an insurance contract governed by New York law and stating that "[i]n a case where a covered and [non-covered] peril combine to cause a covered loss, courts typically apply the efficient proximate cause rule—meaning, that the insured is entitled to coverage only if the covered peril is the predominant cause of the loss or damage" (internal quotation marks omitted)); *Siegel v. Chubb Corp.*, 825 N.Y.S.2d 441, 442 (1st Dep't 2006). We should expect that if parties wish to override the settled principle that concurrent operation of a non-listed peril will not necessarily

4

defeat coverage, they will be reasonably clear about it. *See Pan Am. World Airways, Inc. v. Aetna Cas. & Sur. Co.*, 505 F.2d 989, 1007 (2d Cir. 1974) (recognizing that the efficient proximate cause rule is "adumbrated by the maxim contra proferentem: if the insurer desires to have more remote causes determine the scope of exclusion, he may draft language to effectuate that desire"). These parties were not.

Second, Lexington knows how to make itself plain on these matters. A separate provision in the policy (of the type commonly called an "anti-concurrent clause," *see, e.g.*, *Coney Island Auto Parts Unlimited, Inc. v. Charter Oak Fire Ins. Co.*, 619 F. App'x 28, 29 (2d Cir. 2015) (summary order)), excludes from coverage certain perils and provides expressly that the exclusions apply "regardless of any other cause or event contributing concurrently . . . to the loss." App. 1284. Lexington could have included similar language in Additional Coverage 8: for instance, "We insure for direct physical loss to covered property involving collapse . . . only if the collapse is caused exclusively by one of the following perils. You are not covered if any other cause or event contributes concurrently to the loss." Why use so equivocal a phrase to achieve such an important purpose if a term so admirably serving that purpose was close at hand?[3]

Finally (and most fundamentally), insurance policies are to be construed, and ambiguity assessed, in light of the reasonable expectations of the insured. *Dean v. Tower Ins. Co. of N.Y.*, 979 N.E.2d 1143, 1145 (N.Y. 2012). The considerations discussed above inform our view that a reasonable person whose home collapses predominantly by operation of a named peril expects to be covered. Few would suppose that coverage would be denied merely because some other factor contributed to the event in a minimal, more attenuated way. *See Vardanyan v. AMCO Ins. Co.*, 197 Cal. Rptr. 3d 195, 206 (Cal. Ct. App. 2015) (construing a materially identical provision and rejecting the reading urged by Lexington, reasoning that "a reasonable insured would understand that, if one of the specified perils was the predominant or most important cause of the collapse, the loss would be covered"). Of course, such a belief would cease to be reasonable in the face of policy language clearly to the contrary. But the language in issue here does not answer to that description.

We thus conclude that Additional Coverage 8 is at least ambiguous and can bear the meaning urged by the Fabozzis; the District Court should therefore have construed it in their favor.

---

[3] We pause to note that the anti-concurrent clause is by no means irrelevant to this case: if Lexington is able to show that an *excluded* peril contributed in any way to the collapse, it will win. (That is different from *plaintiffs* showing that a *non-listed* peril did *not* contribute in any way to the collapse, but it is still a crucial arrow in defendants' quiver.) Lexington attempted to prove this at trial; it put on evidence suggesting that the collapse owed to poor workmanship, which is specifically excluded from coverage. But the jury, having found for Lexington on Question 4 of the verdict form (whether plaintiffs proved that the collapse was caused exclusively by a listed peril), did not proceed to question 5 (whether defendants proved that an excluded cause contributed).

*See Allianz*, 416 F.3d at 116 (an ambiguous term in an insurance contract should be interpreted in the insured's favor). To give it the construction preferred by Lexington was error.[4]

Lexington appears to argue that the jury charge was nevertheless proper because (at several points) it used the same "caused only by" locution found in the policy. This is true, but for two reasons it is irrelevant. First, owing to the structure of Additional Coverage 8, the phrase "caused only by" is, as used in the provision, susceptible of two reasonable interpretations. But as used in the instructions, which preserved the phrase but altered its context, the words were unable to bear the reading urged by plaintiffs. *Compare* App. 1281 (the policy, stating, "We insure for direct physical loss to covered property involving collapse . . . *caused only by* one or more of the following:" (emphasis supplied)), *with* App. 1216 (jury instruction, stating, "If you find that plaintiffs have not shown . . . that the collapse was *caused only by* hidden decay or hidden insect or vermin damage, then you must find for defendant." (emphasis supplied)). Second, even if the charge *did* preserve the policy's ambiguity, it would not have been proper for the Court to deliver it. The meaning of a contract is a question for the judge, not the jury; any ambiguity should have been clarified prior to the charge (and, here, resolved against Lexington).

---

[4] *Coney Island Auto Parts*, on which Lexington relies, is in two ways distinguishable. First, in *Coney Island*, the summary judgment record showed that the insured's loss had been caused in part by an excluded cause, triggering the policy's anti-concurrent clause and foreclosing coverage irrespective of the correct interpretation of the exceptions to the collapse exclusion. Here, though the policy contains an anti-concurrent clause, the jury did not find that it applies. *See note 3, ante.* Second, the policy language in *Coney Island* differed materially from the policy language in this case. There, the policy's collapse provision stated, "However, we will pay for collapse of buildings or structures *if caused only by* one or more of the following," J.A. 434, *Coney Island Auto Parts Unlimited, Inc. v. Charter Oak Fire Ins. Co.*, 619 F. App'x 28 (2d Cir. 2015) (No. 14-3220-cv), ECF No. 66 (emphasis supplied); here, its analogue states, "We insure for direct physical loss to covered property involving collapse of a building or any part of a building *caused only by* one or more of the following," App. 1281 (emphasis supplied). "If caused only by," the phrase used in the former, cannot plausibly be read to mean "only if caused by"; including the word "if" at the beginning of the phrase makes it clear that "only" means "exclusively." But "if" is absent from the provision in issue here, permitting the interpretation that plaintiffs urge. *Coney Island* therefore cannot help defendants. Indeed, if the case bears on this one at all, it is in demonstrating how easily Lexington could have made itself clear had it wished to do so.

## CONCLUSION

In sum, we conclude that the District Court erred in construing Additional Coverage 8 and charging the jury in accordance with that construction. We thus **VACATE** the judgment of February 27, 2015 and **REMAND** for such further proceedings as may be appropriate in the circumstances.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk